## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Joel Marvin Munt,

Case No. 18-cv-3390 (DWF/ECW)

        Plaintiff,

    v.

**REPORT AND RECOMMENDATION**

Paul Schnell, Michelle Smith, Tammy
Wherley, Michael Costello, David
Reishus, Jeanne Michels, Sadie Snyder,
Eddie Miles, Victor Wanchena, Mike
Warner, *in their individual and official
capacities*,

        Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss (Dkt. 29),

Plaintiff Joel Marvin Munt's[1] ("Munt" or "Plaintiff") Request for a Stay and Sanctions

(Dkt. 36), Plaintiff's Request for a Gag Order (Dkt. 38), Plaintiff's Motion to Certify

Class (Dkt. 61), Plaintiff's Request for Sanctions (Dkt. 67), Plaintiff's Motion to Strike

---

[1]     Munt has filed several habeas petitions and civil cases in this District, some of which are based on the same facts he alleges in his current Complaint. *See, e.g.*, *Munt v. Grandlienard*, Case No. 13-cv-3573 (SRN/SER); *Munt v. Larson*, Case No. 15-cv-582 (SRN/SER); *Munt v. Minn. Dep't of Corrs.*, Case No. 16-cv-1206 (SRN/SER); *Munt v. Minn. Dep't of Corrs.*, Case No. 17-cv-3756 (DSD/HB); *Munt v. Roy*, Case No. 17-cv-5215 (SRN/SER); *Munt v. Miles*, Case No. 18-cv-17 (JRT/KMM) (claims based on incident involving library worker); *Munt v. Roy*, Case No. 18-cv-2144 (SRN/SER) (claims involving letter sent to corrections officer); *Munt v. Schnell*, Case No. 19-cv-56 (JNE/HB); *Munt v. Schnell*, Case No. 19-cv-1142 (NEB/ECW); *Munt v. Schnell*, Case No. 19-cv-1560 (WMW/BRT). Munt referenced several of these cases in his Complaint. (Dkt. 1 at 65-67.) He also has an unsuccessful state habeas petition relating to the 2015 library worker incident and a second relating to the 2016 letter incident. *Munt v. Smith*, No. A16-0462, 2016 WL 7042010 (Minn. Ct. App. Dec. 5, 2016); *Munt v. Miles*, No. A18-0740, 2018 WL 6165501 (Minn. Ct. App. Nov. 26, 2018).

(Dkt. 86), and Plaintiff's Request for Court Actions (Dkt. 87).  The case has been referred

to the undersigned United States Magistrate Judge for a report and recommendation

pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the

Court recommends granting Defendants' Motion to Dismiss, denying Plaintiff's Motion

for a Stay and Sanctions, denying Plaintiff's Request for a Gag Order, denying Plaintiff's

Motion to Certify Class, denying Plaintiff's Motion to Strike, and denying Plaintiff's

Request for Court Actions.

## I.    BACKGROUND

### A.    Procedural History

On December 13, 2018, Munt, then a prisoner at the Minnesota Correctional

Facility in Oak Park Heights ("MCF-OPH")[2], filed a "Civil Rights Complaint Pursuant to

42 USC § 1983, 1985, 1st Amd Right to Petition."  (Dkt. 1 ("Complaint").)  The

Complaint named the following Defendants: Tom Roy[3], Michelle Smith, Tammy

---

[2]    "The district court may take judicial notice of public records and may thus
consider them on a motion to dismiss."  *Stahl v. United States Dep't of Agric.*, 327 F.3d
697, 700 (8th Cir. 2003) (citing *Faibisch v. Univ. of Minn.*, 304 F.3d 797, 802-03 (8th
Cir. 2002)); *Levy v. Ohl*, 477 F.3d 988, 992 (8th Cir. 2007) (state court records).  Munt
was indicted by a grand jury of four counts of first-degree murder, one count of second-
degree murder, two counts of first-degree aggravated robbery, three counts of second-
degree assault, three counts of kidnapping, and three counts of criminal vehicular
operation causing injury, arising out of the shooting death of his ex-wife and the
kidnapping of their three children.  *State v. Munt*, 831 N.W.2d 569, 575 (Minn. 2013).
Ultimately, Munt was convicted of first-degree premeditated murder and sentenced to life
in prison without the possibility of release.  *Id.* at 576.

[3]    By order dated June 3, 2019, the Court directed the Clerk of Court to substitute
Paul Schnell for Tom Roy for the official capacity claim against the Commissioner of
Corrections pursuant to Federal Rule of Civil Procedure 25(d).  (Dkt. 24 at 1 n.1.)

Wherley, Michael Costello, David Reishus, Jeanne Michels, Sadie Jensen[4], Eddie Miles, Victor Wanchena, and Mike Warner, in their official and individual capacities, as well as the United States Courts and MN Courts ("the Minnesota courts").  (Dkt. 1.)

Initially, Munt did not pay the filing fee for this matter but instead applied for *in forma pauperis* ("IFP") status.  (Dkt. 2.)  On January 31, 2019, the Court ordered Munt to pay an initial partial filing fee of at least $15.09.  (Dkt. 3 at 4.)  Munt paid the initial partial filing fee (Dkt. 4) and the matter went before the Court on Munt's IFP application. On April 1, 2019, the Court granted Munt's application for IFP status (Dkt. 7 at 1) and also recommended that Defendants "MN Courts" and "U.S. Courts" be dismissed from this action (Dkt. 6 at 6).  On June 3, 2019, the Court granted the remaining Defendants' motion for an extension of the deadline to file a responsive pleading (Dkt. 18), which gave them until June 28, 2019 to file an initial responsive pleading (Dkt. 24).  On June 20, 2019, U.S. District Judge Donovan W. Frank adopted the April 1, 2019 Report and Recommendation over Munt's objections and dismissed Munt's claims against the Minnesota Courts and U.S. Courts without prejudice.  (Dkt. 26 at 4.)

On June 21, 2019, the Court denied Munt's initial request to stay the proceedings (Dkt. 8) filed on April 5, 2019.  (Dkt. 27.)

On June 28, 2019, Defendants filed a Motion to Dismiss.  (Dkt. 29.)  Munt filed a Request for an Extension, seeking an additional sixty days from July 3, 2019, which he

---

[4]     Sadie Jensen is now known as Sadie Snyder.  (Dkt. 24 at 1 n.2.)

stated was the date he received Defendants' Motion to Dismiss. (Dkt. 34 at 1.)[5]  In

addition, Munt filed a Motion to Exceed Word Count Limit. (Dkt. 35.) On July 15,

2019, the Court granted in part Munt's Request for an Extension insofar as the Court

extended his deadline to August 2, 2019 and granted in part Munt's Motion to Exceed

Word Count Limit insofar as Munt was permitted 18,000 words (rather than the default

12,000 words) for his response. (Dkt. 43.)

On July 10, 2019, Munt filed a Request for a Stay and Sanctions (Dkt. 36) and a

Request for a Gag Order (Dkt. 38).

On July 18, 2019, the Defendants and Munt filed a stipulation agreeing to stay

discovery pending the Court's ruling on Defendants' Motion to Dismiss. (Dkt. 45.) The

Court approved the parties' stipulation. (Dkt. 49.)

On July 22, 2019, Munt filed objections (Dkt. 50) to the Court's July 15, 2019

Order (Dkt. 43) insofar as it denied in part his requests for a sixty-day extension and to

exceed the word count limit in response to Defendants' Motion to Dismiss (Dkt. 42). On

August 19, 2019, Munt filed a brief that exceeded 18,000 words (Dkt. 55), along with a

result that the Court accept his "late and oversized" brief. (Dkts. 53, 55.) On September

16, 2019, Munt filed a Motion to Certify Class. (Dkt. 61.). On September 20, 2019,

District Judge Frank overruled Munt's objections, affirmed the July 15, 2019 Order (Dkt.

43), denied Munt's request to accept late and oversized brief (Dkt. 53), ordered Munt's

overlong Memorandum in Opposition to Motion to Dismiss (Dkt. 55) stricken, and

---

[5]    In a letter filed on July 11, 2019, Defendants stated that they did not oppose an
extension of time but asked that it be limited to thirty days. (Dkt. 42 at 1.)

allowed Munt to re-file a response to Defendants' Motion to Dismiss (Dkt. 42) of no more than 18,000 words within 14 days of that Order.  (Dkt. 65 at 2.)

On September 27, 2019, Munt requested that sanctions be imposed against Defendants and counsel, alleging that Defendants, in bad faith, represented to the Court that Munt has a personal computer and a printer in his cell.  (Dkt. 67 at 1-2.)  In support of his claim, Munt filed an exhibit consisting of several Offender Kite Forms.  (Dkt. 68.)

On September 30, 2019, Munt filed a Motion for Reconsideration or Extension (Dkt. 71) with respect to Judge Frank's September 20, 2019 Order (Dkt. 65) insofar as it denied in part his requests for a sixty-day extension and to exceed the word count limit in response to Defendants' Motion to Dismiss (Dkt. 29).  Judge Frank denied Munt's Motion for Reconsideration or Extension (Dkt. 71) finding that "Plaintiff has failed to demonstrate the 'extraordinary circumstances' necessary to warrant reconsideration." (Dkt. 76 at 3.)

On October 18, 2019, Munt filed a letter requesting additional time to file his response to Defendants' Motion to Dismiss.  (Dkt. 77.)  Munt was ordered to file his response no later than November 6, 2019.  (Dkt. 78.)

On November 4, 2019, Munt filed a memorandum in opposition to Defendants' Motion to Dismiss.  (Dkt. 80.)

On December 16, 2019, Munt filed a Motion to Strike Defendants' reply memorandum.  (Dkt. 86.)  On the same date, Munt filed a document entitled "Request for Court Actions" to move the Court for a stay of the proceedings, an oversized complaint, and for sanctions.  (Dkt. 87.)

**B.    Complaint**

Munt filed his Complaint pursuant to "42 USC § 1983, 1985, 1st Amd Right to Petition." (Dkt. 1.)  Munt specifies that the Complaint is "in connection with several unconstitutional disciplinary rules as well as several incidents of prison discipline and a retaliatory transfer." (*Id.* at 2.)[6]  Munt alleges that Defendants violated his "Federal Constitutional Rights of Right to Petition, Freedom of Speech, Freedom of Association, Equal Protection, Substantive and Procedural Due Process, Access to the Courts, Privilege of Habeas corpus, and right to be free from retaliation." (*Id.* at 3.)  In the Complaint, Munt recounts disciplinary incidents from 2015, 2017, and 2018 and also his transfer from MCF-OPH to the Minnesota Correction Facility in Stillwater ("MCF-STW") in July 2015.

### 2015 Discipline

Munt alleges that in 2015 he approached the law library technician Sadie Jensen at MCF-OPH and "asked to put [ ] in writing" matters relating to his 2015 lawsuit against the Department of Corrections ("DOC"). (Dkt. 1 at 13, 17.)  According to Munt, Defendant Jeanne Michels submitted an affidavit in another case stating the law library technician was able to aid inmates in searching federal district court and circuit court cases. (*Id.*)  After he asked Jensen if that was true, she said it was not true and that she did not have access to the cases or know how to search for them. (*Id.*)  He asked Jensen to put those statements in writing, and when she refused, he "expressed that [he] would then need to subpoena her." (*Id.*)  Munt alleges that, as a result, he was wrongfully

---

[6]    The Court uses the CM/ECF system's pagination to refer to Munt's filings.

charged for violating an Offender Discipline Regulation ("ODR") prohibiting disorderly conduct. (*Id.* at 19.) He alleges that he was put in pre-hearing detention because he was allegedly a risk to the security and orderly operation of the facility and the safety of staff and other inmates. (*Id.* at 18.)

Munt alleges that this ODR provides:

**Disorderly Conduct**

A)    No offender shall engage in disruptive or nuisance conduct. This includes any activity which has the potential to cause injury to self, another person or canine; or which has the potential of causing damage to property; or throwing any object or substance on a person.

B)    No offender shall create sufficient noise to disturb others. Any offender activity loud enough to disturb others in nearby cells/rooms or areas is a violation of this rule.

(*Id.*)

Munt alleges that "[t]his rule is almost never enforced for actual violations" and is "treated completely subjectively and is one of two catch all rules used by staff to arbitrarily and capriciously punish inmates when they know no actual rule violations have occurred." (*Id.* at 19-20.) Munt alleges that at the disciplinary hearing, Defendant Michael Costello stated that "his mind was made up," proceeded to make comments about Munt's court actions, and ridiculed Munt's constitutional rights. (*Id.* at 21.) Additionally, Munt alleges that Costello refused to allow Munt to present video evidence or call witnesses at the hearing, "which would have proven the Incident Report did not accurately portray the encounters." (*Id.*) At the conclusion of the hearing, Munt claims he was sentenced to thirty days in segregation and that his administrative appeal was denied. (*Id.*) Munt asserts that while in segregation, he was "denied the means to file a

habeas petition challenging the discipline" and "denied the ability to pursue other court actions." (*Id.* at 21-22.) According to Munt, Defendants deprived him of his property and his job at MCF-OPH and punished him for conducting discovery and for attempting to pursue legal actions. (*Id.* at 22.)

### 2015 Transfer from MCF-OPH to MCF-STW

Next, Munt alleges that his subsequent 2015 transfer from MCF-OPH to MCF-STW was in retaliation for his exercise of his constitutional rights. (*Id.* at 23.)

### 2017 Discipline

After his transfer to MCF-STW, Munt alleges that he "engaged in a relationship" with a female correctional officer in 2017. (*Id.* at 23.) Munt asserts his actions never violated any ODRs, that policy actually permits staff members to establish such staff-inmate relationships, and that many inmates and staff engage in similar relationships without repercussion. (*Id.* at 23-24.) Munt claims that on November 3, 2017, he handed a letter to the correctional officer "expressing his feelings" for her, which she then reported.[7] (*Id.* at 25.) According to Munt, she was required by policy to report the letter, which he did not know at the time, and that officer did not allege any wrongdoing. (*Id.*) Munt asserts that he was consequently charged with violating four ODRs including

---

[7]     This appears to be the same letter referenced in one of Munt's state habeas cases, where the Minnesota Court of Appeals described the letter as a "19-page 'love letter' to a corrections officer." *Munt*, 2018 WL 6165501, at *1. The correctional officer filed an incident report and turned the letter over to prison authorities, Munt was charged with violating the Abuse/Harassment, Disorderly Conduct, Sexual Behavior, and Soliciting/Bribery ODRs and admitted to Abuse/Harassment and Disorderly Conduct. *Id.* The remaining two charges were withdrawn. *Id.*

Abuse/Harassment, Sexual Behavior, Soliciting/Bribery, and Disorderly Conduct.  (*Id.* at 25-30.)

Munt alleges those Abuse/Harassment, Sexual Behavior, and Soliciting/Bribery ODRs state as follows:

**Abuse/Harassment**

No offender shall show overt disrespect for another person.  This includes abuse/harassment shown whether or not the subject is present.  Abuse/harassment includes, but is not limited to, derogatory or profane writing; remarks or gestures; name calling, yelling, and other acts intended as public expressions of disrespect for authority and made to others.

**Sexual Behavior**

No offender shall request, solicit, or engage in consensual or unwanted sexual behavior or be in a situation that gives evidence of such action.  Sexual behavior includes, but is not limited to, intercourse, kissing, embracing, hand holding, touching the intimate parts of another and inappropriate masturbation.  "intimate parts" means breast, penis, buttocks, scrotum, or vaginal area, whether clothed or unclothed.

**Soliciting/Bribery**

No offender shall be involved in any activity which implies an offer, a promise to give, or give a gift directly or indirectly to staff or an offender in exchange for something to which he/she is not entitled.

(*Id.* at 26-28.)

Munt alleged that he never treated the correctional officer in a disrespectful manner, nor did she express that she felt disrespected by him, and that his "understanding was that she found the letter very sweet."  (*Id.* at 26.)  He alleges that he and the correctional officer had never touched each other and that he was "at a loss" as to how he could have been charged with offending the Sexual Behavior ODR.  (*Id.* at 27.)  Finally, he alleged that the letter did not "offer anything in exchange for anything."  (*Id.* at 28.)

Nevertheless, Munt pleaded guilty to these charges. (*Id.* at 29.) He alleges that he did so because of his inability to reference the rules, a fear for his court actions, a fear of retaliation against him and the correctional officer, and a lack of sleep. (*Id.*)

Munt accuses prison staff of "refusing to preserve the letter" after he made it clear that he intended to challenge the discipline using the letter, and alleges that prison staff "threatened to destroy it and later claimed to have done so, and began impeding [his] use of the administrative process even more." (*Id.*) Although Munt authored the letter, his Complaint does not contain any information about the letter's content other than that the letter expressed his feelings and was allegedly not disrespectful and did not "offer anything in exchange for anything." (*See generally id.* at 26-29.) Munt alleges that he attempted to apologize to the correctional officer for the letter by writing her a kite. (*Id.* at 30.) He asserts that no rule prohibits apologizing by kite. (*Id.*) However, Munt claims that his kite was "intercepted," and he was told not to have "any communication with [the correctional officer] in any form for any reason." (*Id.*) Munt further alleges that his MCF-STW case worker later told Munt that he had not violated any ODRs and that the "apology kite was the civilized thing to do." (*Id.* at 31.)

Munt claims to have been transferred three times, two of which Munt believes were in retaliation for his court actions. (*Id.* at 31.) Munt also states that staff retaliated against his access to the courts "in general" and are hostile to him because he collects evidence relating to staff behavior. (*Id.* at 34.)

**2018 Discipline**

Munt asserts that on January 11, 2018, he was sent to segregation and received additional charges, which were later dropped, but "the harm from them was never reversed." (*Id.* at 35.) Munt claims that he was "double-bunked and deprived of property" and that the discipline was prompted because he was collecting evidence in connection with a different case. (*Id.*) According to Munt, he allegedly violated six ODRs, but has "no idea which of the charges refer to which alleged offense." (*Id.* at 37.) Munt stated that he intended to challenge those ODRs as vague and overbroad once Defendants filed a "Reply" to his Complaint. (*Id.*)

Munt claims that when his time in segregation ended, he suffered retaliation and harassment from staff and was prevented from using "the administrative process." (*Id.*) Munt alleges that several more trips to segregation had followed and that he was eventually transferred from MCF-STW to MCF-OPH. (*Id.*) Munt argues that he was deprived of his property; "repeatedly had to ship out property"; was forced to go without clean clothes, forced to go hungry, forced to go without certain medications, and required to share a cell; and that his typewriter was damaged. (*Id.* at 38.)

Munt seeks various forms of relief including declaratory relief, compensatory damages, punitive damages, repayment of alleged costs, and broad injunctive relief.[8] (Dkt. 1 at 50-65.) Construing the Complaint liberally, as the Court is required to do for

---

[8]    In the Complaint, Munt specifies that "injunctive relief is sought against defendants in their official capacities. Declaratory relief is sought against defendants in both official and individual capacities. Each claim is brought against defendants in both individual and official capacities. Each claim is brought against the relevant defendants." (Dkt. 1 at 4.)

pro se plaintiffs, *Solomon v. Petray*, 795 F.3d 777, 786 (8th Cir. 2015), the Court categorizes Munt's claims as follows: (1) a retaliation claim; (2) a conspiracy claim; (3) a claim that certain ODRs, certain violation findings in 2015 and 2017 against Munt, and the direct order prohibiting Munt from communicating with the correctional officer he claims to have had a relationship with are unconstitutional; (4) a due process claim; (5) an equal protection claim; and (6) an access to courts claim.[9]

## II.    LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotation marks and citations omitted). Thus, subject matter jurisdiction "is a threshold requirement which must be assured in every federal case." *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) permits a party to challenge whether the court has subject matter jurisdiction to hear the matter. *Johnson v. United States*, 534 F.3d 958, 964 (8th Cir. 2008). When considering a Rule 12(b)(1) motion, a district court may consider matters outside the pleadings. *Satz v. ITT Fin. Corp.*, 619 F.2d 738, 742 (8th Cir. 1980). "[N]o presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990).

---

[9]    The Complaint also alleged claims against "United States Courts" and "MN Courts" for refusing to hear habeas corpus petition claims with respect to prison discipline (Dkt. 1 at 39), which have since been dismissed (Dkt. 26).

When deciding a Rule 12(b)(1) motion, the Court must first "distinguish between a 'facial attack' and a 'factual attack.'" *Osborn*, 918 F.2d at 729 n.6 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)).  "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993).  In contrast, in a factual attack, the court makes "inquiries into and resolves factual disputes," *Faibisch*, 304 F.3d at 801, and is free to "consider[ ] matters outside the pleadings," *Osborn*, 918 F.2d at 729 n.6.  The nonmoving party in a factual challenge does not enjoy the benefit of Rule 12(b)(6) safeguards.  *Id.*  "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true.  *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).  In addition, a court must afford the plaintiff all reasonable inferences from those allegations.  *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).  At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to

> provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965
> n. 3. A district court, therefore, is not required "to divine the litigant's intent
> and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and
> it need not "conjure up unpled allegations" to save a complaint. *Rios v. City
> of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009). The Eighth Circuit has

interpreted the "face" of the complaint as including public records and materials

embraced by the complaint as well as materials attached to the complaint. *C.H. Robinson

Worldwide, Inc. v. Lobrano*, 695 F.3d 758, 764 (8th Cir. 2012); *see also Stahl v. United

States Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003) (citing *Faibisch v. Univ. of

Minn.*, 304 F.3d 797, 802-03 (8th Cir. 2002)); *Levy v. Ohl*, 477 F.3d 988, 992 (8th Cir.

2007) (state court records). "Here, the Court examines the allegations in the Complaint

and takes note of Munt's litigation in this District, as his lawsuits are matters of public

record, without the need to convert Defendants' motion into a motion for summary

judgment." *Munt v. Roy*, No. 17-cv-5215 (SRN/SER), 2019 WL 157289, at *2 (D. Minn.

Jan. 10, 2019), *aff'd sub nom. Munt v. Schnell*, 777 F. App'x 181 (8th Cir. 2019).

### III.    PLAINTIFF'S MOTION TO STRIKE

The Court first considers Munt's Motion to Strike Defendants' reply in support of

their Motion to Dismiss because the outcome of the Motion to Strike dictates whether the

Court considers Defendants' arguments in their reply. Munt moves to strike Defendants'

reply on the grounds that Defendants raised new arguments in their reply to which he was

unable to reply. (Dkt. 86.) He also contends their arguments were "facially frivolous" or

"bare assertions," and so unrelated to his claims that he was unable to "guess what

Defendants were actually arguing." (*Id.* at 1.) In response, Defendants argue that the

Court should deny Munt's motion to strike because their reply complies with Local Rules. (Dkt. 88 at 1-2.) Munt replies that Defendants' reply "seeks to correct the insufficiency of their pleading in their motion, thus denying Plaintiff a chance to respond to the actual arguments," but contends he was unable to identify the "specific details" of the new arguments because he has been denied means to buy new legal materials and prison officials took the materials he had. (Dkt. 29 at 1, 3-4.) District of Minnesota Local Rule 7.1(c)(3) states that "[a] reply memorandum must not raise new grounds for relief or present matters that do not relate to the opposing party's response. Having carefully considered Defendants' reply in support of their Motion to Dismiss, the Court finds that Defendants did not raise new arguments or present matters that do not relate to Munt's response in their reply and have not violated the Local Rules in any manner that would justify striking their reply. Accordingly, the Court recommends denial of Munt's Motion to Strike.

## IV.    DEFENDANTS' MOTION TO DISMISS

Defendants move this Court to dismiss the claims against them for the following reasons: (1) the Eleventh Amendment and § 1983 bar many of Munt's claims; (2) Munt failed to state claims for his various alleged constitutional violations; (3) Munt failed to allege sufficient involvement in an alleged constitutional violation to support liability against several Defendants, and to maintain an official capacity claim; (4) qualified immunity bars Munt's individual capacity claims against them; and (5) this Court should not exercise its supplemental jurisdiction over possible state claims. (Dkt. 30 at 1-2.) The Court addresses each argument below.

**A.     Eleventh Amendment Immunity and § 1983**

Defendants argue that this Court should dismiss any official capacity claims for damages and any requests for retroactive equitable relief against Defendants in their official capacities, as well as any individual capacity claims seeking injunctive relief. (Dkt. 30 at 7-10.)

**1.     Claims for Damages Against Defendants in Their Official Capacities**

Defendants argue that Munt cannot maintain a claim for damages against them in their official capacities. (*Id.* at 7.) Additionally, they argue that even if Munt's claims are not barred by sovereign immunity, § 1983 bars his claims. (*Id.* at 7-8.)

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55 (1978)). "Absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Graham*, 473 U.S. at 169. Minnesota has not waived its Eleventh Amendment immunity from suit in federal court. *See DeGidio v. Perpich*, 612 F. Supp. 1383, 1388-89 (D. Minn. 1985). Congress has not abrogated immunity to Section 1983 claims. *Burke v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991). Moreover, "neither a State nor its officials acting in their official capacities are 'persons' under §

1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the Court recommends dismissal of the § 1983 claims to the extent Munt seeks monetary relief against Defendants in their official capacities.

>   **2.      Requests for Retroactive Equitable Relief Against Defendants in Their Official Capacities**

Defendants argue that Munt cannot seek retroactive equitable relief against them in their official capacities. (Dkt. 30 at 8-9.) Specifically, Defendants argue that the Complaint alleges no ongoing violation of federal law but rather is focused on events that occurred from 2015 to 2018 relating to Munt's discipline, placement in segregation, and transfer to different facilities. (*Id.* at 8.) According to Defendants, Munt seeks retroactive injunctive relief to the extent he seeks "the expungement of his several disciplinary records, the charges, and finding that the several disciplinary rules he was charged with and the direct order to be held unconstitutional." (*Id.* at 8-9.)

In response, Munt argues Defendants have engaged in "systemic retaliation" and that the allegedly "[u]nconstititional disciplinary rules" are "[a]ll ongoing" violations. (Dkt. 80 at 6.) He also contends that the effects of the challenged disciplinary charges and convictions "will last Plaintiff's entire life if discipline (both charges and convictions) are [sic] not expunged." (*Id.*)

While "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law," *Hawkins*, 540 U.S. at 437 (citing *Ex parte Young*, 209 U.S. at 155-56 (1908)), the Supreme Court has held that "[f]ederal courts may not award retrospective relief, for instance, money damages or its equivalent, if the State invokes its immunity," *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437

(2004) (citing *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)); *see also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 102-03 (1984)).  Requesting injunctive relief against state officials in federal court must be connected to an **ongoing** violation of federal law.  *Green v. Mansour*, 474 U.S. 64, 68 (1985).

Here, Munt's Complaint seeks retroactive equitable relief for alleged past constitutional violations in the form of expungement of his disciplinary records relating to the 2015, 2017, and 2018 incidents, a declaration that he "did not engage in disorderly conduct" with respect to the library incident, and declarations that he did not violate the "Abuse/Harassment, Sexual Behavior, and Disorderly Conduct rules in giving a letter" to the correctional officer with whom he claims he had a relationship.[10]  (Dkt. 1 at 50-56.) Munt relies on *King v. Dingle*, 702 F. Supp. 2d 1049 (D. Minn. 2010), in support of his argument that seeking expungement of disciplinary records does not constitute seeking retroactive equitable relief and does not violate the Eleventh Amendment.  (Dkt. 80 at 6.) In *King*, the district court noted that expungement of a disciplinary record could constitute prospective relief in cases where government officials continue to use past violations against a plaintiff.  702 F. Supp. 2d at 1070 n.10 ("While . . . retroactive equitable relief is unavailable under the Eleventh Amendment, many Courts have found that an expungement, even where predicated on a past violation of the law, is still, at least in some circumstances, prospective in nature, at least to the extent that it prohibits government officials from continuing to use a past violation against the plaintiff.").  Here,

---

[10]    Munt also seeks declarations that certain ODRs are unconstitutionally vague and overbroad (Dkt. 1 at 50-56), which the Court addresses in Section IV.B.2.

19

while Munt makes the conclusory argument that the effects of the charges and conviction will last his entire life (Dkt. 80 at 6-8), the Complaint does not allege any facts plausibly suggesting that the 2015, 2017, and 2018 charges and convictions are actually having any ongoing effect on Munt.[11]  He has not alleged any prison rule or policy establishing that these violations will count against him later.  For these reasons, the Court recommends dismissal of the § 1983 claims to the extent Munt seeks retrospective equitable injunctive relief against Defendants in their official capacities.[12]

### 3.    Injunctive Relief Against Defendants in Their Individual Capacities

Defendants argue that the Court should dismiss all of Munt's claims for injunctive relief against the Defendants in their individual capacities.  (Dkt. 30 at 9.)  Specifically, they argue that such relief is inappropriate because Munt's claims are against the individual rather than the individual's employer.  (*Id.*)  The Eighth Circuit has not yet decided whether a plaintiff may obtain injunctive relief in a § 1983 action against a defendant in his or her individual capacity.  However, the Court concludes that Munt's claims for prospective injunctive relief against the Defendants in their individual capacities is barred.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984); *see also Yul Chu v. Mississippi State University*, 901 F. Supp. 2d 761, 771

---

[11]    Even if the relief Munt seeks with respect to the order and his disciplinary record were not retroactive, as explained in Section IV.B.2, he has failed to state a claim with respect to the constitutionality of the challenged ODRs and order.

[12]    Defendants also argue that Munt's request for relief is improper under the Prison Litigation Reform Act ("PLRA").  (Dkt. 30 at 9.)  They do not cite any cases where a motion to dismiss was granted on this ground, and in any event, the Court need not address this argument because it recommends dismissal on other grounds.

(N.D. Miss. 2012) (concluding that Eleventh Amendment bars injunctive relief against individual defendants in their personal capacity); *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011) (holding Section 1983 plaintiffs may sue official-capacity defendants only for injunctive relief) (citing *Hafer v. Melo*, 502 U.S. 21, 30 (1991)); *cf. ACLU of Minnesota v. Tarek ibn Ziyad Academy*, 788 F. Supp. 2d 950, 959 (D. Minn. 2011) (permitting a request for prospective injunctive relief against defendants in their individual capacities to move forward because "the nature of relief sought by Plaintiff . . . and the alleged roles of the Individual Defendants . . . **make this case unique**," where the "case involve[d] allegations regarding actions taken by the Individual Defendants both within and outside the scope of their official duties.") (emphasis added). Accordingly, the Court recommends dismissal of the § 1983 claims to the extent Munt seeks injunctive relief against Defendants in their individual capacities.

## B.    Munt's Federal Rights Allegations

The Defendants also contend that Munt's Complaint fails to state a claim for any violations of his federal rights.  The Court addresses this argument in the context of Munt's proposed claims below.[13]

---

[13]    As mentioned above in Section I.B, Munt's claims are as follows: (1) a retaliation claim; (2) a conspiracy claim; (3) a claim that the DOC's disciplinary rules, violation findings in 2015 and 2017 against Munt, and the direct order prohibiting Munt from communicating with the correctional officer he claims to have had a relationship with are unconstitutional; (4) a due process claim; (5) an equal protection claim; and (6) an access to courts claim.

1.    **Retaliation Claim**

Munt's retaliation claim appears to originate from four separate events: Munt's discipline in 2015, 2017, and 2018, as well as his transfer from MCF-OPH to MCF-STW. (Dkt. 1 at 17-22, 23-34, 35-39.)  Defendants argue that Munt's retaliation claim is conclusory and fails to state a claim for relief.  (Dkt. 30 at 10.)  In response, Munt argues that his disciplinary incidents and subsequent transfer were retaliation for his assertion of his constitutional rights.  (Dkt. 80 at 10-22.)[14]  In their reply, Defendants contend that Munt's Complaint and the materials it embraces demonstrates that the DOC had legitimate reasons for disciplining and transferring Munt.  (Dkt. 84 at 3.)  For the reasons stated below, the Court finds Munt has failed to state a retaliation claim with respect to the challenged discipline or the transfers.

To establish a prima facie case of retaliatory discipline, the plaintiff must satisfy three elements: "'(1) the prisoner exercised a constitutionally protected right; (2) prison officials disciplined the prisoner; and (3) exercising the right was the motivation for the discipline.'"  *Haynes v. Stephenson*, 588 F.3d 1152, 1155 (8th Cir. 2009) (quoting *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1119 (8th Cir. 2007)).  The third factor of a retaliation claim requires a prisoner to establish that "a desire to retaliate was the

---

[14]    Munt presents new allegations that are not part of his Complaint to support his retaliation claim.  (Dkt. 80 at 24-26.)  As such, they will not be considered when deciding Defendants' motion to dismiss.  *See Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (holding that a motion to dismiss "will succeed or fail based upon the allegations contained in the face of the complaint"); *see also Midwest Disability Initiative v. GM Minneapolis LLC*, No. 16- cv-0868 (MJD/HB), 2016 WL 4575317, at *2 (D. Minn. June 27, 2016), *R&R adopted by* 2016 WL 4547154 (observing that factual allegation in responsive memorandum but not in complaint could not be considered in deciding motion to dismiss).

actual motivating factor" behind the adverse action. *Goff v. Burton*, 91 F.3d 1188, 1191 (8th Cir. 1996) (applying test to claim for retaliatory transfer); *Haynes*, 588 F.3d at 1156 (applying test to claim for retaliatory discipline). "This is a 'but for' test dealing with motive, not causation." *Sisneros v. Nix*, 95 F.3d 749, 752 (8th Cir. 1996). Speculative and conclusory allegations of retaliation should be dismissed. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) ("Because Atkinson's allegations of retaliation were speculative and conclusory, this claim was properly dismissed."); *see also Meuir*, 487 F.3d at 1119 (citing *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985)) ("[A]lleging that an act was retaliatory is insufficient.") A prison official may successfully defend against a retaliatory discipline claim by proffering "some evidence" that the inmate actually violated a rule. *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008).

As to retaliatory transfer, generally, a prisoner has no constitutional right to remain in a particular institution. *Goff*, 7 F.3d at 737 (8th Cir. 1993) (quoting *Murphy v. Missouri Dep't of Correction*, 769 F.2d 502, 503 (8th Cir. 1985)). While prison officials may transfer a prisoner for "no reason at all," a prisoner cannot be transferred in retaliation for exercising a constitutional right. *Id.* at 738 (internal citations omitted). "[I]f the discipline which the prisoner claims to have been retaliatory was in fact imposed for an actual violation of prisoner rules or regulations, then the prisoner's claim that the discipline was retaliatory in nature must fail." *Id.* (citing *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990)).

First, the Complaint alleges that Munt's 2015 discipline was the result of retaliation. (Dkt. 1 at 17-22; Dkt. 80 at 10-23.) Munt claims to have had a protected

interest in threatening Sadie Jensen, the library technician, with a subpoena when she refused his request to put certain statements in writing for him.  (*See* Dkt. 1 at 17; Dkt. 80 at 12.)  Defendants contend that Munt's request, which resulted in disciplinary action, posed a legitimate security concern and necessitated his discipline and subsequent transfer.  (Dkt. 84 at 4.)  The Court agrees.  The Complaint notes that the incident report alleged that Munt was "extremely angry and aggressive."  (Dkt. 1 at 19.)  Further, in *Munt v. Smith*, the Minnesota Court of Appeals noted that "[a] department of corrections worker in the education unit reported that Munt shouted angrily at her during a conversation she had with him in the Oak Park Heights prison library."  2016 WL 7042010, at *1 (Minn. Ct. App. Dec. 5, 2016).  "A prison official charged Munt with violating a prison rule against disorderly conduct.  A hearing officer found Munt guilty after considering the worker's report and Munt's testimony in his own defense.  The officer assigned Munt to 30 days in segregated confinement.  The associate warden upheld the decision."  *Id.*  For these reasons, the Court concludes that Munt has failed to plausibly allege that his request that Jensen make certain statements in writing and threat to subpoena her when she refused to do so (even assuming those acts constitute protected conduct), as opposed to his disruptive conduct when she declined, were the actual motivation for the discipline.  Finally, notwithstanding Munt's argument that "Defendants offered nothing to indicate discipline would have occurred absent any protected conduct" (Dkt. 80 at 10-11), "Munt—not Defendants—bears the burden of plausibly alleging this element of his prima facie case, and he fails to do so," *see Munt v.*

CASE 0:18-cv-03390-DWF-ECW    Doc. 90    Filed 01/31/20    Page 25 of 56

*Roy*, No. 0:18-CV-2144-SRN-SER, 2019 WL 4389005, at *7 (D. Minn. Sept. 13, 2019)

(citing *Goff v. Burton*, 7 F.3d 734, 737-38 (8th Cir. 1993)).

Second, the Complaint alleges that Munt's transfer from MCF-OPH to MCF-STW

was retaliatory (Dkt. 1 at 23) and that he was "transferred three times. Two in retaliation

for [his] court actions." (*Id.* at 31.) However, Munt does not have a constitutional right

to remain at MCF-OPH, or any correctional facility. *Goff*, 7 F.3d at 737 (quoting

*Murphy*, 769 F.2d at 503). Munt has not plausibly alleged that his transfer to MCF-STW

following the incident involving Jensen was actually motivated by protected conduct.

Rather, the Complaint and the public record demonstrates that he was transferred for

violating the Disorderly Conduct rule and presenting a security risk. *See Ponchik v.

Bogan*, 929 F.2d 419, 420 (8th Cir. 1991) (although prisoner's filing of two lawsuits

against prison officials was clearly a factor in the transfer request, transfer would have

taken place regardless, based on prisoner's serious and repetitive misconduct).

Third, the Complaint alleges that Munt's 2017 discipline was the result of

retaliation. (Dkt. 1 at 23-31.) Munt asserts that he was charged with violating four

ODRs including Abuse/Harassment, Sexual Behavior, Soliciting/Bribery, and Disorderly

Conduct after giving a correctional officer a letter expressing his feelings for her. (*Id.* at

23-30.) While Munt asserts that his actions never violated DOC rules (*id.* at 23; Dkt. 80

at 28), he admits in the Complaint that he pleaded guilty to certain violations, which

resulted in him being placed in segregation (Dkt. 1 at 29).[15] Accordingly, the Complaint

---

[15] Munt suggests in his Complaint that he was coerced into pleading guilty. (Dkt. 1 at 29.) Nevertheless, the fact that he pleaded guilty to violating ODRs demonstrates the Defendants had a legitimate reason to move Munt and place him in segregation.

25

does not plausibly allege that but for the exercise of a protected conduct, Munt would not have been disciplined for sending the 2017 letter.

Finally, the Complaint alleges that Munt's 2018 discipline was the result of retaliation. (Dkt. 1 at 23-31.) The Court finds that this claim is conclusory. Munt generally asserts that he was sent to segregation, was deprived of property, and that the discipline was prompted because he was collecting evidence in connection with a different case. (*Id.* at 35.) Munt also states that staff retaliated against his access to the courts "in general" and are hostile because he collects evidence relating to staff behavior. (*Id.* at 34.) After segregation, Munt claims he suffered retaliation and harassment from staff and was prevented from using "the administrative process." (*Id.* at 35.) However, these are the type of speculative and conclusory allegations of retaliation that should be dismissed. *See Atkinson*, 91 F.3d at 1129. Moreover, Munt admits in his Complaint that his 2018 discipline was based in part on his use of a "privacy sheet" in his cell, which it was "impossible to avoid the risk of discipline over," and the discovery of an "improvised security tool" (which he alleges was planted). (Dkt. 1 at 35.) U.S. District Judge Susan Richard Nelson has found that "Defendants have met their burden of establishing that the prohibition against the use of privacy sheets to ensure an unobstructed view into inmates' cells is the least restrictive means of furthering the compelling governmental interests in safety and security." *Munt v. Minnesota Dep't of Corr.*, No. 16-CV-1206 (SRN/SER), 2018 WL 1046506, at *6 (D. Minn. Feb. 26, 2018), *aff'd*, 745 F. App'x 656 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 1649 (2019).

Consequently, Munt has not plausibly alleged that protected conduct, rather than security concerns, motivated his 2018 discipline.

In sum, Munt has not plausibly alleged a retaliatory discipline claim against Defendants. Accordingly, the Court recommends dismissing Munt's retaliation claim under Rule 12(b)(6).

### 2. Claim that DOC's Disciplinary Rules and Direct Order Are Unconstitutional

In the Complaint, Munt challenges the constitutionality of certain DOC ODRs and the 2017 direct order against him. (Dkt. 1 at 40-42.) Defendants argue that "allowing inmates the ability to disrupt staff, create nuisances, threaten staff for doing their jobs, be insolent to staff, or carry out improper staff-and-inmate relationships would be in odds with maintaining prison security." (Dkt. 30 at 15.) In his response, Munt argues that the DOC disciplinary rules he was charged with are unconstitutionally vague (Dkt. 80 at 31-66) and that the direct order he received censors his protected speech (*id.* at 36). In their reply, Defendants argue that there is a valid, rational connection between the DOC's disciplinary rules, the direct order and a legitimate government interest. (Dkt. 84 at 8.) Defendants also maintain that "[t]he DOC cannot allow an inmate to disturb staff or create a nuisance through his romantic fixation on a correctional officer, such conduct is harmful to both staff and inmates and would be at great odds to the goals of rehabilitation and prison security." (*Id.* at 9.)

The Court first considers Munt's challenge to the order prohibiting him from communicating with the correctional officer to whom he sent the letter expressing his feelings. Munt claims this order censors his protected speech. (Dkt. 80 at 34.) A prison

regulation that restricts a prisoner's constitutional rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).  In *Turner*, the Supreme Court established four factors a court should consider in making that determination: (1) "whether there is a 'valid rational connection' between the prison regulation and the government interest justifying it"; (2) "whether there is an alternative means available to the prison inmates to exercise the right"; (3) "whether an accommodation would have 'a significant "ripple effect"' on the guards, other inmates, and prison resources"; and (4) "whether there is an alternative that fully accommodates the prisoner 'at de minimis cost to valid penological interests.'" *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 982-83 (8th Cir. 2004) (quoting *Turner*, 482 U.S. at 89-90).  "Prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (citing *Jones v. North Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 128 (1977)).  "The burden, moreover, is not on the State to prove the validity of prison regulations but on the prisoner to disprove it." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citing *Jones*, 433 U.S. at 128).

Assuming for purposes of the Motion to Dismiss that Munt's expression of his romantic feelings for a correctional officer constitutes protected speech, the Court concludes that there is a valid rational connection between the order against Munt and the government's interest in maintaining order in the prison and protecting its staff. "[I]nstitutional security is the most compelling legitimate government interest in a prison

setting." *Simpson v. Cty. of Cape Girardeau, Missouri*, 879 F.3d 273, 281 (8th Cir. 2018); *see Zenanko v. LaFleur*, 228 F.3d 933, 933 (8th Cir. 2000) (recognizing legitimate penological interests of safety and security). Permitting Munt to communicate with the correctional officer so she can "choose[] to resume the relationship," as he seeks in his Complaint (Dkt. 1 at 55-56), would seriously inhibit the government's ability to maintain order, protect its staff, and maintain discipline. Other courts have held that prohibiting romantic relationships between corrections officers and inmates is reasonable related to a legitimate penological interest. *See, e.g.*, *Keeney v. Heath*, 57 F.3d 579, 581 (7th Cir. 1995) (finding that a romantic relationship between a corrections officer and an inmate could make the officer "a potential facilitator of unlawful communication between [the inmate] and others and a potential provider of favored treatment for him" and that "[j]ust the suspicion of favored treatment could create serious problems of morale"); *Choice v. Coughlin*, No. 94 Civ. 8307, 1996 WL 325627 (S.D.N.Y. June 11, 1996) (finding that a prisoner's letter regarding his romantic feelings for a civilian medical employee at prison was "fundamentally inconsistent with the legitimate penological interests of the facility" because it created "a potential threat to the safety and security of [the employee] and other prison staff"). Munt has not alleged any alternative or accommodation to prohibiting Munt's communications with the officer that would have a de minimis cost to those valid penological interests and would not have a serious ripple effect as to other staff and inmates. The Court therefore recommends dismissal of Munt's claim to the extent he asserts the order prohibiting him from communicating with the correctional officer with whom he alleges he had a relationship violates the First Amendment.

Munt also seeks a declaration that the DOC's Abuse/Harassment, Sexual Behavior, Soliciting/Bribery, Disorderly Conduct, and Disobeying a Direct Order[16] ODRs are unconstitutionally vague and overbroad.  (Dkt. 1 at 50-52.)  He appears to be making "as applied" and facial attacks on these ODRs.  For instance, Munt argues that the Disorderly Conduct, Abuse/Harassment, Soliciting/Bribery, and Sexual Behavior ODRs are "vague as applied to the conduct in question" (*id.* at 19-20) and also contends the five ODRs are facially vague and overbroad (Dkt. 80 at 31-57).

"A statute is unconstitutionally vague if persons 'of common intelligence must necessarily guess at its meaning and differ as to its application.'"  *U.S. v. Posters N Things Ltd.*, 969 F.2d 652, 659 (8th Cir. 1992) (quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926)).  "The degree of vagueness that the Constitution tolerates—as well as the relative importance of fair notice and fair enforcement—depends in part on the nature of the enactment."  *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982).  "A statute is overbroad in constitutional terms if it comprehends a substantial range of applications to activity protected by the First Amendment, in addition to the unprotected activities it legitimately prohibits."  *Virginia v. Hicks*, 539 U.S. 113, 118-20 (2003); *Turchick v. United States*,

---

[16]    The "Disobeying a Direct Order" ODR states:

> No offender shall refuse to comply with a specifically stated (oral or written) directive posted/distributed within the facility, given by a staff member or ordered by a court facility, whether or not the directive is preceded by the words "direct order."  In the case of conflicting directives, the last directive must be followed.

(Dkt. 1 at 30.)

561 F.2d 719, 721 (8th Cir. 1977). Courts review claims that a prison regulation is overbroad under the factors enumerated in *Turner v. Safley*.

Although in some instances courts have required evidence to make a determination as to whether a prison regulation is vague, *see, e.g.*, *Smith v. Fabian*, No. CIV. 10-2193 JRT/TNL, 2012 WL 1004982, at *4 (D. Minn. Mar. 26, 2012) (addressing First Amendment challenge to policy prohibiting the delivery of certain sexually explicit material to prisoners using summary judgment standard), given the nature of the regulations at issue here, the Court concludes the First Amendment issues raised in the Complaint can be decided at the Rule 12(b)(6) stage, *see, e.g.*, *Walker v. McCaughtry*, 141 F. App'x 460 (7th Cir. 2005) (affirming dismissal at pre-screening stage regulation First Amendment claim relating to "Group resistance and petitions" regulation[17]); *Larue v. Rubenstein*, No. CIV.A. 2:09-0395, 2009 WL 5217680, at *3 (S.D. W. Va. Dec. 31, 2009) (dismissing under Rule 12(b)(6) First Amendment claims challenging regulations relating to "Contraband" and "Unauthorized Entering into a Contract"[18]); *Lerman v. Fed.*

---

[17]    The regulation in question stated:

   Any inmate who participates in any activity with an inmate gang, as defined in s. DOC 303.02(11), or possesses any gang literature, creed, symbols or symbolisms is guilty of an offense. An inmate's possession of gang literature, creed symbols or symbolism is an act which shows that the inmate violates the rule. Institution staff may determine on a case by case basis what constitutes an unsanctioned group activity.

*Walker*, 141 F. App'x at 461.

[18]    The regulations in question stated:

   Disciplinary Rule 2.11—Contraband

*Bureau of Prisons*, No. CIV.A. 1:01-CV-232-C, 2003 WL 22121092 (N.D. Tex. Sept. 12, 2003) (dismissing under Rule 12(b)(6) First Amendment challenge to BOP regulation prohibiting inmate from acting with "insolence towards a staff member").

Here, the Court first considers whether Munt has plausibly alleged that the Disorderly Conduct, Abuse/Harassment, Soliciting/Bribery, Sexual Behavior, and Disobeying a Direct Order ODRs are vague. Munt argues that terms such as "disrupt," "nuisances," "insolent," "improper," "disruptive," "includes," "disrespect," "derogatory," "profane," "name calling," "other acts,"[19] "sexual behavior," "implies," and "inappropriate masturbation" in the Disorderly Conduct, Abuse/Harassment, Soliciting/Bribery, and Sexual Behavior ODRs are facially vague and overbroad. (Dkt. 80 at 33, 42, 44, 45, 46.) He concedes, however, that the Disobeying a Direct Order ORD's "words are quite clear." (Dkt. 80 at 47.) With respect to Munt's challenges based

---

No inmate shall possess any contraband, whether in his/her possession or in his/her cell. Contraband shall include any item or substance not specifically permitted to be inmate property by institutional rules or any altered, permissible item or excess of permissible items. Contraband shall also include any permissible item not being used for its original intent. Inmates shall be held accountable for contraband items found in their living areas.

Disciplinary Rule 2.29—Unauthorized Entering into a Contract

No inmate shall enter into any form of contract or be a party to such without the authorization of the Warden/Administrator or his/her designee including marriage, bank accounts, loans, post office boxes, etc.

*Larue*, 2009 WL 5217680, at *3.

[19]     The Court notes that "other acts" in the Abuse/Harassment ODR is modified as "other acts intended as public expressions of disrespect for authority and made to others." (Dkt. 1 at 26.)

on certain words plucked out of context of the challenged ODRs, courts have rejected

vagueness challenges to those and similar words in less-restrictive contexts than the

prison setting.  *See, e.g.*, *Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972)

(antinoise ordinance prohibiting persons from "willfully mak[ing] or assist[ing] in the

making of any noise or diversion which disturbs or tends to disturb the peace or good

order of such school session or class thereof"); *LeRoy v. Illinois Racing Bd.*, 39 F.3d 711,

715 (7th Cir. 1994) (rejecting vagueness and overbreadth challenge to racing rule

forbidding "improper language" or "improper conduct" by licensees toward regulators);

*United States v. Zagorovskaya*, No. CR 13-583 PA, 2014 WL 12665158, at *10 (C.D.

Cal. Oct. 8, 2014), *aff'd*, 628 F. App'x 503 (9th Cir. 2015) ("The terms 'nuisance,'

'trouble,' 'annoyance,' and 'inconvenience' are all words of common understanding,

which a reasonable person of ordinary intelligence would be familiar with.").  Further, at

least one court has dismissed under Rule 12(b)(6) a First Amendment challenge in the

prison context that was based on the word "insolence."  *Lerman*, 2003 WL 22121092.  In

view of these cases, and considering that these ODRs exist in the prison context, the

Court concludes that a person of common intelligence would have fair notice of what

conduct is prohibited by the ODRs.

The Court next considers Munt's facial overbreadth argument.  All five ODRs in

question are directly related to the legitimate penological interests of prison safety and

security, including preventing the abuse and harassment (sexual or otherwise) of prison

staff.  *See Thornburgh v. Abbot*, 490 U.S. 401, 415 (1989) ("The legitimacy of the

Government's purpose in promulgating these regulations is beyond question.  The

regulations are expressly aimed at protecting prison security, a purpose this Court has said is central to all other corrections goals." ) (cleaned up); *Mauro v. Arpaio*, 188 F.3d 1054, 1059 (9th Cir. 1999) (en banc) ("[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular likewise is legitimate."). Munt has not alleged any alternative regulations or accommodations that would have a de minimis effect on those legitimate interests or would have a significant ripple effect on other inmates and correctional staff. Moreover, the Court does not find Munt's arguments as to which applications are allegedly unconstitutional (e.g., "any letter to loved one," "all romantic, familial, and social interactions and many court pleadings or communications," "all manner of protected conduct, including developing evidence for this case") persuasive as to whether a substantial number of the challenged ODRs' "applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *Minnesota Majority v. Mansky*, 708 F.3d 1051, 1056 (8th Cir. 2013). The Court therefore concludes that Munt has failed to state a claim that the challenged ODRs are facially overbroad.

With respect to Munt's "as applied" First Amendment challenges, while Munt now disputes acting in a disorderly manner in connection with the 2015 law library technician incident, the Complaint notes that the incident report alleged that Munt was "extremely angry and aggressive" (Dkt. 1 at 19), and the public record establishes that "[a] department of corrections worker in the education unit reported that Munt shouted angrily at her during a conversation she had with him in the Oak Park Heights prison library, *Munt*, 2016 WL 7042010, at *1. The Court concludes that the Disorderly

34

Conduct regulation as applied to that incident put Munt on fair notice that he could not become angry and aggressive, or shout at, correctional staff.  As to an "as-applied" challenge arising from his 2017 letter expressing his feelings, Munt pleaded guilty to violating the Abuse/Harassment and Disorderly Conduct ODRs, and has not alleged sufficient facts regarding the content of his letter to plausibly state a claim for relief to an "as applied" challenge to the Sexual Behavior and Soliciting/Bribery ODRs.[20]

### 3.    Due Process Claims

Though unclear, it appears the Complaint alleges a Due Process claim. Defendants argue that the Complaint fails to state any due process claim in connection with Munt's being placed in segregation, losing his prison job, and his disciplinary hearing for violating ODRs.  (Dkt. 30 at 15.)  In response, Munt alleges that his due process was violated at his disciplinary hearing because he was not able to call witnesses and present evidence.  (Dkt. 80 at 72.)  In their reply, Defendants argue that Munt was afforded all the due process he was entitled to at the disciplinary hearing.  (Dkt. 84 at 12.)

Under the Fourteenth Amendment, no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The first step in determining if there has been a due process violation is determining if there is a protected life, liberty, or property interest.  *See Movers Warehouse, Inc. v. City of Little Canada*, 71 F.3d 716, 718 (8th Cir. 1995).  "[W]here no such interest exists, there can be no due process violation."  *Dobrovolny v. Moore*, 126 F.3d 1111, 1113 (8th Cir. 1997).

---

[20]    The Court recognizes that Munt no longer has the letter, but Munt has not alleged the contents of the letter sufficiently for the Court to understand how the contents are or are not implicated by Sexual Behavior and Soliciting/Bribery ODRs.

This is true whether the due process claim is a procedural or substantive one.  *See*

*Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (citing *Dover Elevator Co. v.*

*Arkansas State Univ.*, 64 F.3d 442, 445-46 (8th Cir. 1995)).

Procedural due process requires "the opportunity to be heard at a meaningful time

and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also*

*Boner v. Eminence R-1 School Dist.*, 55 F.3d 1339, 1342 (8th Cir. 1995) ("Due process

secures only an opportunity to be heard, not guaranteed or probable success.").  Where a

plaintiff has not identified what liberty or property interest they were deprived of, "any

procedural due process claim necessarily fails." *Bealieu v. Ludeman*, 690 F.3d 1017,

1047 (8th Cir. 2012).  Procedural due process constrains government decisions "which

deprive individuals of 'liberty' or 'property' interests within the meaning of the Due

Process Clause of the Fifth or Fourteenth Amendment." *Mathews*, 424 U.S. at 332.

Accordingly, in order to state a procedural due process claim, a plaintiff must show (1)

the existence of a constitutionally protected liberty or property interest, and (2) that the

defendants deprived him of that interest without constitutionally adequate process.

*Schmidt v. Des Moines Pub. Schs.*, 655 F.3d 811, 817 (8th Cir. 2011); *see also Kroupa v.*

*Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (explaining that a "procedural due process

claim turns on (1) whether the state actors decision impacted a protected liberty or

property interest, and if so, (2) what process was constitutionally 'due'").  Absent a

protected liberty or property interest, an individual is not constitutionally entitled to any

process. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (explaining

that courts do not consider what process is due unless the plaintiff has a protected liberty

or property interest); *see also Olim v. Wakinekona*, 461 U.S. 238, 250 (1983) ("Process is not an end in itself.  Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement . . . .  The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . . but in making that choice the State does not create an independent substantive right.").

The substantive due process component of the Fourteenth Amendment protects individuals against certain government actions, regardless of the procedures used to implement them.  *See Schmidt*, 655 F.3d at 816.  To show a violation of substantive due process, the "plaintiff must demonstrate both that the official's conduct was conscience-shocking, and that the official violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Hall v. Ramsey Cty.*, 801 F.3d 912, 917 (8th Cir. 2015) (citations and quotation marks omitted).  "To satisfy the conscience-shocking standard, a government official's conduct must be 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"  *Id.* at 917-18 (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847-48 n. 8 (1998)).  Conduct that is "'intended to injure [an individual] in some way unjustifiable by any governmental interest is . . . most likely to rise to the conscience-shocking level.'"  *Id.* at 918 (alteration and omission in original) (quoting *Lewis*, 523 U.S. at 849).  "But when the acts of a government official" constitute "'something more than negligence but less than intentional conduct' the 'totality of the facts in a given case'

must be assessed to determine whether behavior is conscience shocking." *Id.* (footnote omitted) (quoting *Lewis*, 523 U.S. at 849, 850).

The Court first considers Munt's due process claim in connection with the 2015 hearing arising from the law library incident that resulted in his placement in segregation for 30 days. (Dkt. 1 at 21-22.) Munt alleges that Costello presided over his disciplinary hearing at MCF-OPH and stated, before the hearing began, that "his mind was made up" and that Costello ridiculed his constitutional rights and made comments about Munt's court actions. (*Id.* at 21.) He also alleged that Costello refused to let an allegedly exculpatory video be presented or have two correctional officers, whose testimony "would have proven the Incident Report did not accurately portray the encounters," testify. (*Id.*) After the hearing, Munt was sentenced to 30 days in segregation and his administrative appeal was denied. (*Id.*) If true, some of these assertions are troubling. However, as explained below, because Munt has not shown a deprivation of a protected liberty interest in his placement in segregation, his procedural due process claim fails. *See Schmidt*, 655 F.3d at 817 (procedural due process claim first requires showing of the existence of a constitutionally protected liberty or property interest); *see also Olim*, 461 U.S. at 250 ("The State may choose to require procedures for reasons other than protection against deprivation of substantive rights, . . . but in making that choice the State does not create an independent substantive right.").

It is well-established that prisoners have a liberty interest in their conditions of confinement only when the conditions impose an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484

(1995). "If [an inmate] has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined." *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir.1996). Munt's procedural due process claim based on the 2015 hearing that resulted in his 30 days' placement in segregation fails because no protected liberty interest was at stake. *See Portley-El v. Brill*, 288 F.3d 1063, 1065 (8th Cir. 2002) ("We have consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*.") (affirming pre-screening dismissal of due process claim based on 30 days in Minnesota punitive segregation) *see also Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (quoting *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."). Munt's placement in segregation for 30 days does not constitute an extraordinary length of time. *See Phillips*, 320 F.3d at 847 (no liberty interest at stake where prisoner was demoted to segregation for 37 days with no contact visitation, exercise privileges, or chapel rights); *Portley-El*, 288 F.3d at 1065 (no liberty interest at stake when prisoner subjected to "thirty days punitive segregation in Minnesota—precisely the discipline at issue in *Sandin*"). Further, Munt has alleged no facts plausibly suggesting that his 30 days in segregation was an atypical or significant hardship in the context of prison life. Accordingly, any procedural due process claim based on the 2015 hearing that resulted in 30 days in segregation fails. *See Green v. Hearing Officer on report 452704*, Civ. No. 14-857 ADM/BRT, 2015 WL 2381590, at *2-4 (D. Minn. May 19, 2015) ("Because Green's 120-day stay in disciplinary

segregation does not constitute an 'atypical and significant hardship' sufficient to give rise to a protected liberty interest, he was not constitutionally entitled to any process before being placed in such segregation.").

As to the job Munt allegedly lost, the Eighth Circuit has held that prisoners have no constitutional right to a particular prison job. *See Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002). Munt has therefore failed to state a procedural due process claim.

It is possible that Munt seeks to allege a due process violation based on the order prohibiting him from communicating with the correctional officer he claims he had a relationship with, which does not appear to have occurred as a result of any hearing or other process. However, any such claim would be subsumed by his First Amendment claim. *See Grahm v. Connor*, 490 U.S. 386, 395 (1989) (holding where a specific Amendment provides the protection against the alleged unconstitutional governmental action "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims").

Finally, Munt has failed to allege facts suggesting that any of Defendants' other conduct was "'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Hall*, 801 F.3d at 917-18 (quoting *Cty. of Sacramento*, 523 U.S. at 847-48 n.8). The Complaint lacks facts that demonstrate the Defendants' conduct was intended to injure Munt in an unjustifiable way, *id.* at 918 (alteration and omission in original) (quoting *Lewis*, 523 U.S. at 849). Therefore, Munt's due process claim, to the extent it is based on substantive due process, fails to state a claim.

For these reasons, the Court finds that Munt's Due Process claim, whether procedural, substantive, or both, fails to state a claim upon which relief may be granted. Accordingly, the Court recommends dismissal of Munt's Due Process claim.

### 4.    Equal Protection Claim

To the extent Munt alleges an Equal Protection claim, Defendants argue that Munt failed to allege that anyone similarly situated to him was treated differently, and thus, his Equal Protection claim fails to state a claim. (Dkt. 30 at 17.) In his response, Munt merely argues he was "[t]reated differently than other similarly situated inmate[s]." (Dkt. 80 at 31.) In their reply, Defendants maintain that the Complaint fails to show differential treatment of a similarly situated person. (Dkt. 84 at 14-15.)

The Equal Protection Clause requires state actors to treat similarly situated persons alike, but state actors do not violate the Equal Protection Clause if they treat dissimilarly situated persons dissimilarly. *Ganley v. Minneapolis Park & Recreation Bd.*, 491 F.3d 743, 747 (8th Cir. 2007) (internal quotations and citations omitted). "As a threshold matter, in order '[t]o state an equal protection claim, [a plaintiff] must have established that they were treated differently from others similarly situated to them.'" *Carter v. Arkansas*, 392 F.3d 965, 968 (8th Cir. 2004) (quoting *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998)).

Although Munt identified a number of difficulties that prisoners face, Munt has not alleged any facts that would support an inference that he was treated differently from similarly situated individuals. For example, Munt states he was "sent to SEG and received numerous charges" (Dkt. 1 at 35) and "repeatedly required to share a cell and

staff drug out his time in a double cell" (*id.* at 38). Munt has not alleged, however, facts that suggest that other prisoners who are placed in segregation or disciplined for their actions were treated differently than he was. Munt also contends that other prisoners who engaged in relationships with correctional staff were not disciplined or ordered to cease communicating with correctional staff. (Dkt. 1 at 23, 32.) However, Munt has not alleged facts suggesting, at a minimum, that prisoners who sent letters expressing their feelings to correctional staff, much less when those letters were reported by the object of the prisoners' affections, were treated differently than he was. Further, he has not alleged any facts suggesting purposeful or intentional discrimination by the Defendants. *See Klinger v. Dep't of Corrections*, 31 F.3d 727, 733 (8th Cir. 1994) ("A fundamental principle of equal protection is that the Constitution only prohibits intentional or purposeful discrimination by the state."). For these reasons, the Court recommends dismissing Munt's Equal Protection claim.

### 5.    Access to Courts Claim

Munt asserts an access to courts claim, which relates in part to his retaliation claims. Munt asserts that he was punished "solely for attempting to perform discovery for court and for attempting to pursue legal actions." (Dkt. 1 at 22.) Additionally, Munt alleges he was denied access to the courts because he was deprived of books and legal paperwork. (*Id.* at 22, 36.) Defendants argue that Munt "fails to allege an actual injury that demonstrates he was denied access to the courts." (Dkt. 30 at 18.) In response, Munt argues that "Defendants intentionally ensured habeas petitions could not be filed while in SEG." (Dkt. 80 at 74.)

For a prisoner to successfully plead such a claim, he or she must show a specific sort of injury:

> Whether an access claim turns on a litigating opportunity yet to be gained or an opportunity already lost, the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong. . . .  [O]ur cases rest on the recognition that the right [of access to courts] is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court. . . . It follows that the underlying cause of action, whether anticipated or lost, is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation. . . .  Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant.

*Christopher v. Harbury*, 536 U.S. 403, 414-16 (2002) (citations omitted); *see also White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007) ("To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.") (citing *Harbury*, 536 U.S. at 413, 415; *Lewis v. Casey*, 518 U.S. 343, 351, 353, 355 (1996)).  Where a prisoner fails to show actual injury, he or she lacks standing to bring a right of access claim, and a federal court thus lacks jurisdiction over the claim.  *See White*, 494 F.3d at 680 (citing *Casey*, 518 U.S. at 349); *Holleran v. Baker*, 109 F. App'x 830, 831 (8th Cir. 2004) (affirming dismissal of access to court claims where plaintiff "failed to allege an actual injury, i.e., that a 'nonfrivolous legal claim had been frustrated or was being impeded'") (quoting *Casey*, 518 U.S. at 351-53) (per curiam).

Munt has not met this pleading requirement because he has not identified any nonfrivolous and arguably meritorious underlying legal claim that he was or is being prevented from litigating.  Although he alleges his 2015 segregation resulting from the law library technician incident "rendered habeas relief moot" (Dkt. 1 at 22), he has not alleged facts suggesting that habeas petition, which is based on the same incident and facts considered here, would have been nonfrivolous and an arguably meritorious one.[21] As to other claims, while Munt claims his access to legal materials was restricted during segregation and that some of his books and legal materials were never returned to him, Munt fails to demonstrate that his efforts at pursuing a legal claim have been hindered. On the contrary, the record in this case demonstrates that Munt has filed numerous letters, requests, and motions in connection with his claims.  Munt claims he was "denied the ability to pursue other court actions" (*id.* at 22), however, the Complaint does not specify any causes of action that prison officials prevented Munt from bringing.[22]  Munt has thus failed to show actual injury, and so lacks standing to bring a right of access claim.

---

[21] Moreover, given his time in segregation only lasted 30 days, the docket in the habeas case Munt filed based on that 2015 segregation suggests that any habeas petition filed while he was in segregation would have been moot by the time it was decided.  *See Munt v. Smith*, 82-CV-15-3798 (showing more than 30-day delay between case filing and decision) (available at http://pa.courts.state.mn.us/CaseDetail.aspx?CaseID=1619193540) (last accessed Jan. 31, 2020).

[22] Though unsuccessful, the Court notes that Munt previously challenged disciplinary charges, policy, and punishment he received for violating prison discipline regulations by filing a habeas petition in a Minnesota state district court.  *See Munt v. Miles*, No. A18-0740, 2018 WL 6165501, *1 (Minn. Ct. App. Nov. 26, 2018). Ultimately, the Minnesota Court of Appeals affirmed the district court's determination that Munt's petition was frivolous.  *Id.* at *3.

Accordingly, this Court lacks jurisdiction over Munt's access to courts claim and recommends its dismissal.

### 6.    Conspiracy Claim

The Complaint asserts a claim of conspiracy to violate Munt's constitutional rights under 42 U.S.C. §§ 1983 and 1985.  (Dkt. 1 at 1, 7.)  Defendants argue that Munt's Complaint fails to support a conspiracy claim because Defendants were all employees under the same organization, Munt has not alleged the requisite animus, and Munt's allegations are speculative and conclusory.  (Dkt. 30 at 13.)  In response, Munt asserts that he has sufficiently pled claims under §§ 1983 and 1985, and a failure to prevent civil rights conspiracy under § 1986.  (Dkt. 80 at 70).  In their reply, Defendants argue that Munt cannot state a conspiracy claim under §§ 1983, 1985, and 1986 because Munt has not alleged facts demonstrating a meeting of minds or a racial or class-based invidious animus.  (Dkt. 84 at 9.)

As to Munt's § 1985 claim, that section establishes three categories of conspiracy to interfere with civil rights: (1) "preventing officers from performing duties"; (2) "obstructing court proceedings"; and (3) "depriving individuals of rights or privileges." 42 U.S.C. § 1985.  The Court construes Munt's claim for conspiracy to interfere with his civil rights as a claim brought under 42 U.S.C. § 1985(3).  In order to establish a civil rights conspiracy under 42 U.S.C. § 1985(3), the plaintiff must satisfy the following factors:

> (1) the defendants conspired, (2) with the intent to deprive them, either directly or indirectly, of equal protection of the laws, or equal privileges and immunities under the laws, (3) an act in furtherance of the conspiracy, and

(4) that they or their property were injured, or they were deprived of exercising any right or privilege of a citizen of the United States.

*Barstad v. Murray County,* 420 F.3d 880, 887 (2016).

With respect to a § 1985 conspiracy claim, "a government entity or corporation cannot conspire with itself." *Habhab v. Hon*, 536 F.3d 963, 969 (8th Cir. 2008) (citing *Barstad*, 420 F.3d at 887); *see also Thomas v. City of St. Louis, Missouri*, No. 4:18-CV-01566 JAR, 2019 WL 3037200, at *5 (E.D. Mo. July 11, 2019) ("The Eighth Circuit has applied the doctrine, which provides that a local government entity cannot conspire with itself through its agents acting within the scope of their employment, to conspiracy claims under 42 U.S.C. § 1985, but has not addressed the applicability of the doctrine to § 1983 conspiracy claims.") (cleaned up). "An exception arises when the agents were, at the time of the conspiracy, acting beyond the scope of their authority or for their own benefit." *Barstad*, 420 F.3d at 887 (citing *Garza v. City of Omaha*, 814 F.2d 553, 556 (8th Cir. 1987)). Here, Munt's § 1985 conspiracy claim fail at least because the named Defendants are all employees under the same governmental organization, the DOC, *see Habhab*, 536 F.3d at 969, and he did not allege any facts suggesting the named Defendants "act[ed] beyond the scope of their authority or for their own benefit,"[23] *Barstad*, 420 F.3d at 887 (citing *Garza*, 814 F.2d at 556). Munt argued in his response that Defendants were motivated by an "individual personal stake" and acted outside the

---

[23]    Munt briefly raises this argument in his response, stating that corrections officers "reached outside of their roles" and that "knowingly participating in false disciplinary charges, other retaliatory acts, or committing federal crimes is arguably outside their discretionary authority and duties." (Dkt. 80 at 69.) However, for reasons discussed in Sections IV.B.1 and IV.B.2, the Court finds that such allegations fail to state a claim.

scope of their employment. (Dkt. 80 at 69.) However, he did not identify any allegations in the Complaint plausibly suggesting Defendants' acts were outside of the scope of their employment or for their own benefit. *See Gibb*, 958 F.2d at 816 (holding that a motion to dismiss "will succeed or fail based upon the allegations contained in the face of the complaint"). Moreover, the Court has recommended dismissal of Munt's federal claims above. Consequently, Munt has not plausibly alleged the fourth element of his § 1985 claim. The Court therefore recommends dismissal of Munt's § 1985 conspiracy claims.

As to Munt's § 1983 conspiracy claim, to establish a conspiracy claim under § 1983 against a particular defendant, a plaintiff must prove: (1) that the defendant conspired with others to deprive him of a constitutional right, (2) at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy, and (3) the overt act injured him. *Askey v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999) (internal citations omitted). "The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim." *Id.* at 957 (internal citations omitted). As far as the Court can discern from the Complaint, Munt's conspiracy claims relate to his retaliation and access to courts claims relating to his 2015 discipline at MCF-OPH.[24] (*See, e.g.*, Dkt. 1 at 9 (allegations regarding "conspiring").) Because the Court has found that Munt has not stated a claim

---

[24] To the extent Munt's conspiracy claims are based on the 2017 and 2018 discipline, his allegations of a conspiracy are too speculative and conclusory to support a retaliation claim. *See Atkinson v. Bohn*, 91 F.3d 1127, 1129 (8th Cir. 1996) (stating that allegations of retaliation must be more than speculative and conclusory). Further, because the Court has found Munt has not stated a claim for any violation of the Constitution or federal law, he has not alleged any deprivation of a constitutional right that would support a § 1983 conspiracy claim.

with respect to his retaliation and access to the courts claims, his § 1983 conspiracy claim necessarily fails.

As to any § 1986 claim, the Court need not consider Munt's argument in his response brief because he did not assert a § 1986 claim in his Complaint. Further, a § 1986 claim must be predicated upon a valid § 1985 claim. *See Jensen v. Henderson*, 315 F.3d 854, 863 (8th Cir. 2002). Because the Court concludes that Munt has not stated a claim under § 1985, the Court concludes that Munt has failed to state a claim under § 1986.

For these reasons, the Court recommends dismissing Munt's civil rights conspiracy claims under Rule 12(b)(6).

## C.    Personal Involvement

Defendants argue that Munt fails to plead sufficient personal involvement to sustain an individual capacity claim for damages under § 1983. (Dkt. 30 at 18.) A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution to state a valid § 1983 claim. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 676). The Court agrees with respect to Defendants Schnell, Smith, Miles, Warner, and Wanchena that any claims against them fail because the allegations against them appear to be based on their general supervisory authority. (Dkt. 1 at 8.)[25] Because Munt fails to plead sufficient

---

[25]    With respect to Defendant Schnell, Munt argues that as Roy's successor, he has "ultimate authority over the policies/rules in question." (Dkt. 1 at 8.) With respect to Defendant Michelle Smith, Munt argues that she has "overall authority over OPH." (*Id.* at 9.) With respect to Defendant Eddie Miles, Munt argues he has "overall authority over

personal involvement, Munt cannot maintain individual capacity claims against Defendants Schnell, Smith, Miles, Warner, and Wanchena for damages under § 1983.[26]

## D.    Punitive Damages

Defendants argue that Munt fails to allege sufficient facts to support an award for punitive damages.  (Dkt. 30 at 21.)  In response, Munt argues a "deterrent is needed" because he alleged systemic problems within the DOC, unconstitutional rules, and because there is no evidence Defendants acted with good faith.  (Dkt. 80 at 80-81.)

"[P]unitive damages . . . are aimed at deterrence and retribution."  *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 432 (2001).  "[P]unitive damages should be awarded only if the defendant's culpability is so reprehensible to warrant the imposition of further sanctions to achieve punishment or deterrence."  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003) (citing *BMW of North America, Inc. v. Gore*, 517 U.S. 559, 575 (1996)).  Awarding punitive damages in a § 1983 case requires a factfinder to conclude that a defendant's conduct is either "motivated by evil motive or intent" or "involves reckless or callous indifference to the federally protected rights of others."  *Williams v. Hobbs*, 662 F.3d 994, 1011 (8th Cir. 2011) (citing *Royal v. Kautzky*, 375 F.3d 720, 724 (8th Cir. 2004)).

---

STW."  (*Id.* at 13.)  As for Defendant Mike Warner, Munt generally states that he is "the key player in the wholesale abuse of the disciplinary system at STW."  (*Id.* at 15.)

[26]    Defendants also contend that Munt's allegations regarding the remaining Defendants are conclusory allegations that do not withstand the *Iqbal/Twombly* pleading standard.  (Dkt. 30 at 19-20.)  The Court need not reach this argument because it has recommended dismissal on other grounds.

As previously discussed, the allegations in the Complaint, taken as true, fail to state a claim for relief. Even assuming Munt's claims could withstand Defendants' Motion to Dismiss, there are no allegations (and nothing in the record) suggesting that any of the Defendants' conduct was "motivated by evil motive or intent" or involved a "reckless indifference" to Munt's federally protected rights. Accordingly, the Court finds that the claim for punitive damages should be dismissed.

## E.    Qualified Immunity

Defendants argue that they are entitled to qualified immunity because Munt fails to allege sufficient facts to demonstrate that a particular named Defendant's conduct violated clearly established statutory or constitutional rights. (Dkt. 30 at 23.) In his response, Munt argues that Defendants are on notice that his alleged constitutional claims are clearly established law and that Defendants are not entitled to immunity. (Dkt. 80 at 81-83.) In their reply, Defendants maintain their argument that Defendants did not violate clearly established law and thus, they are entitled to qualified immunity. (Dkt. 84 at 18.)

"Qualified immunity shields government officials from liability unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would know." *Ferguson v. Short*, 840 F.3d 508, 510 (8th Cir. 2016) (citing *Mallak v. City of Baxter*, 823 F.3d 441, 445 (8th Cir. 2016)). "This court examines (1) whether the facts alleged or shown, construed most favorably to the plaintiffs, establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged misconduct, such that a reasonable

official would have known that the acts were unlawful." *Small v. McCrystal*, 708 F.3d 997, 1003 (8th Cir. 2013) (citing *McCaster v. Clausen*, 684 F.3d 740, 745 (8th Cir. 2012)). "[Qualified] immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Having recommended dismissal of Munt's federal constitutional claims, the Court concludes that the Defendants are entitled to qualified immunity.

### F.    Supplemental Jurisdiction Over Claims Grounded in State Law

Defendants argue that because Munt has failed to state a federal claim, the Court should decline to exercise its supplemental jurisdiction over any of Munt's state claims in the Complaint. (Dkt. 30 at 23.) In relevant part, 28 U.S.C. § 1367(a) provides:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). However, "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). To the extent Munt alleges the Court has supplemental jurisdiction over his state claims under 28 U.S.C. § 1367(c)(3), the Court declines to exercise its supplemental jurisdiction. Because the Court recommends granting Defendants' Motion to Dismiss and all claims over which the Court has original jurisdiction, the Court recommends declining to

exercise its supplemental jurisdiction over any of Munt's state claims alleged in the Complaint.

### V.    PLAINTIFF'S REQUEST FOR A STAY AND SANCTIONS

Munt filed a request to stay Defendants' Motion to Dismiss "until [his] medicine is recontinued and is given a chance to recover."  (Dkt. 36 at 4.)  In response, Defendants argue that denying Munt's request is warranted in the interest of judicial economy.  (Dkt. 44 at 4.)

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'"  *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  "The proponent of the stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997) (citing *Landis*, 299 U.S. at 255).  "Because a stay of proceedings has the potential to damage the party opposing it, the decision to stay should weigh the 'competing interests and maintain an even balance,' recognizing that the Supreme Court has counseled moderation in use."  *In re Wholesale Grocery Prods. Antitrust Litig.*, No. 09-md-2090 (ADM/AJB), 2013 WL 6533154, at *1 (D. Minn. Dec. 13, 2013) (quoting *Landis*, 299 U.S. at 255).

However, it appears Munt no longer seeks a stay.  For example, even in his request to stay, Munt concludes by stating that he "requests the remainder of the relief requested **absent the stay**."  (Dkt. 36 at 7) (emphasis added).  In fact, Munt concedes in his reply brief that he no longer is requesting a stay.  (Dkt. 51 at 2 ("Were plaintiff **still** requesting

a stay it would have been warranted.") (emphasis added).)  The fact that Munt no longer

seeks a stay warrants denial of the request to stay as moot, and the Court recommends

denial of the request for a stay.[27]

In the same motion, Munt also asks the Court to issue sanctions on the Defendants

in connection with an alleged "inappropriate response" to Munt's discovery request.

(Dkt. 36 at 5.)  In response, Defendants argue that Munt's assertions are baseless and not

enough to impose sanctions on Defendants for allegations of wrongdoing by individuals

not a party to this lawsuit.  (Dkt. 44 at 4-5.)  It is unclear what form the alleged

"inappropriate response" took, and the parties have stipulated to a stay of discovery.

(Dkts. 45, 49.)  To the extent Munt seeks sanctions based on Defendants' arguments in

support of their Motion to Dismiss, nothing in their arguments warrants sanctions.

Accordingly, the Court recommends denial of Munt's request for sanctions.

## VI.   PLAINTIFF'S REQUEST FOR A GAG ORDER

Munt requests that a "Gag Order be issued preventing Defendants and anyone else

privy to the details of this case from communicating regarding this case with inmates or

other staff members."  (Dkt. 38 at 1.)  Munt claims this request is "necessary to prevent

them from further attempting to inflame people against me in retaliation against my court

exercise."  (*Id.*)  In response, Defendants argue that Munt's request is "overbroad," would

subject both Defendants and counsel to contempt for accessing tools necessary for a

defense, and bar them from discussing factual assertions that Munt himself has already

---

[27]   In the event Munt seeks a stay of the Court's decision on the Motion to Dismiss, he has not met his burden of establishing any need for such a stay.

placed in the public records in this case. (Dkt. 44 at 2.) In reply, Munt argues that Defendants are fully in control of the legal resources he has available to him. (Dkt. 51 at 1.) Munt cites no authority in support of his argument for a gag order, and Defendants have identified serious concerns that would arise from imposing such an order. Consequently, the Court recommends denial of Munt's request for a gag order.

## VII.    PLAINTIFF'S MOTION TO CERTIFY CLASS

Munt requests that this Court certify a general class of all inmates in the custody of the DOC, with seventeen subclasses. (Dkt. 62 at 4-20.) In response, Defendants argue that Munt's class allegations fail to satisfy class certification requirements under Federal Rule of Civil Procedure Rule 23. (Dkt. 66 at 3.) Because the Court recommends dismissing all of Munt's claims against Defendants for the reasons stated in Section IV, the Court recommends denying Munt's Motion to Certify Class as moot.[28]

## VIII.    PLAINTIFF'S REQUEST FOR SANCTIONS

Munt seeks sanctions pursuant to Federal Rule of Civil Procedure 11 on the grounds that Defendants implied he had "gotten" a requested computer and printer in his cell but that Munt actually only had access to a computer in the law library in Defendants' opposition to his request that the Court accept his late and oversized brief. (Dkt. 67.) Defendants respond that Munt did not comply with the 21-day safe harbor provision in Rule 11 and that their statement that Munt "was able to secure a computer at the end of July and was able to type and file his typed 124 page response" was "patently

---

[28]    In the alternative, the Court recommends denying Munt's Motion to Certify Class as premature, given that no discovery has taken place and the scope of this case is uncertain.

obvious." (Dkt. 75 at 2-3.) The Court agrees. Nothing in in Defendants' response to to Munt's request suggests that Munt had access to a computer and printer in his cell (*see* Dkt. 57), and his "late and oversized brief" was indeed typed and printed (*see* Dkt. 55). Consequently, regardless of whether Munt complied with the safe harbor provision of Rule 11, the Court recommends denial of Munt's request for sanctions.

## IX.    PLAINTIFF'S REQUEST FOR COURT ACTIONS

Munt filed a "Request for Court Actions" on December 17, 2019 in which he states he was transferred to Rush City in retaliation for pursuing certain lawsuits and that his legal materials were mixed up and left behind. (Dkt. 87.) He seeks a stay due to the removal of his research and because his incarceration in Rush City is exacerbating his sleep problems. (*Id.* at 6-8.) He also suggests that his Complaint needs amendment, requests leave to file an "oversized" amended complaint, and requests sanctions in the form of his return to MCF-OPH, his old job at OPH, the return of all property, and judgment in his favor on his "11/3/2017 discipline claim." (*Id.* at 8-11.) The Court recommends rejecting Munt's requests for several reasons. First, because the pending motions have been fully briefed, there is no need for a stay. Second, although Munt mentions amending his Complaint, he has not proposed an amended complaint or sought leave to file an amended complaint, and the retaliation arguments in his Request for Court Actions are as conclusory as the retaliation allegations in the Complaint that the Court has found do not state a claim for relief. Third, the "sanctions" he seeks are tantamount to the relief he requested if he succeeded on his original claims. Having recommended dismissal of the Complaint, the Court cannot recommend an award of such

sanctions.  For these reasons, the Court recommends denial of the Request for Court Actions.

## X.    RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED THAT**:

1. Defendants' Motion to Dismiss (Dkt. 29) be **GRANTED**;

2. Plaintiff Joel Munt's Request for a Stay and Sanctions (Dkt. 36) be **DENIED**;

3. Plaintiff Joel Munt's Request for a Gag Order (Dkt. 38) be **DENIED**;

4. Plaintiff Joel Munt's Motion to Certify Class (Dkt. 61) be **DENIED** as moot;

5. Plaintiff Joel Munt's Request for Sanctions (Dkt. 67) be **DENIED**;

6. Plaintiff Joel Munt's Motion to Strike (Dkt. 86) be **DENIED**;

7. Plaintiff Joel Munt's Request for Court Actions (Dkt. 87) be **DENIED**; and

8. Plaintiff Joel Munt's claims be **DISMISSED WITHOUT PREJUDICE**.


DATED: January 31, 2020                     *s/Elizabeth Cowan Wright*
                                            ELIZABETH COWAN WRIGHT
                                            United States Magistrate Judge

## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).